A95A0007. PERKINS v. THE STATE.
(453 SE2d 135)

BEASLEY, Chief Judge.

An indictment was returned against Charlie Perkins and Stanley Stewart charging them with the commission of armed robbery and aggravated assault upon Zimbrick and aggravated assault upon Fagler.

Perkins was found guilty of all three counts. The trial court ordered the Zimbrick assault merged with the armed robbery and sentenced Perkins to life imprisonment on it plus 20 years' imprisonment on the Fagler assault. On motion for new trial, the court merged the Fagler assault with the armed robbery and imposed sentences of 20 years' imprisonment on the armed robbery and the Zimbrick assault.

Fagler and Zimbrick are two undercover narcotics officers employed by the City of Atlanta Police Department. Between 8:00 and 9:00 p.m. on December 2, 1992, they drove a truck to an apartment complex on Bankhead Highway to make a street-level drug buy. Fagler was driving and Zimbrick was sitting in the passenger seat. When they entered the driveway, the lights of the truck illuminated three black males leaning into the driver's window of another vehicle. The area was also illuminated by street lights and apartment porch lights. It appeared that the driver of the other vehicle had just made a drug buy.

After the other vehicle left, the black males approached the driver's side of the officers' truck. Defendant asked "how many you want?" The officers gave him $20 and told him they wanted two dime

bags. Defendant grabbed the money and stepped away from the vehicle. He brandished a large handgun, shoved it back in the window, pointed it at Fagler's head, and told them to "give it up." After Zimbrick turned over $180, Stewart started shouting "shoot him, shoot him." Fagler grabbed defendant's gun, and a struggle ensued in which Fagler would push the gun out of the truck and defendant would push it back in. During this struggle, defendant pointed the gun at Zimbrick and attempted to shoot him, but the gun would not discharge. While this was happening, Fagler retrieved his gun and fired it twice, and defendant fled. Afterward, Zimbrick found Stewart on the ground. He identified defendant as the gunman, as did a resident of a nearby apartment who observed the robbery. The resident testified that defendant passed by her apartment and spoke to her as he was fleeing the scene.

Between one-and-one-half and two hours after the robbery, Zimbrick and Fagler viewed photographs of defendant's brother Cedric and defendant. They first looked at the photograph of Cedric and determined he was not the gunman. When they looked at defendant's photograph, they immediately identified him as the gunman.

1. Defendant contends that the officers' in-court identification should have been suppressed in that it was tainted by an impermissibly suggestive photographic identification procedure.

The display of a single photograph is impermissibly suggestive. *Bradley v. State*, 152 Ga. App. 902, 903 (264 SE2d 332) (1980). In this case, the officers viewed two photographs of brothers who presumably look alike. However, the photographs are not in the record, and a photographic display generally consists of more than two photographs. Even if a photographic identification procedure is impermissibly suggestive, the witness' in-court identification is not inadmissible unless, under the totality of the circumstances, there is a substantial likelihood of irreparable misidentification. Id. (" '(T)he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' [Cit.]") The "[i]n-court identification is not unconstitutionally inadmissible ' "(e)ven if the pre-trial identification is 'tainted' . . . if it does not depend upon the prior identification but has an 'independent origin.' " ' [Cits.]" *Butler v. State*, 191 Ga. App. 620 (1) (382 SE2d 616) (1989).

Both Fagler and Zimbrick testified that they got a good look at defendant for several minutes in ample lighting; that they are undercover police officers who focused their attention on the suspects, particularly the defendant, because the officers knew from the outset

that they would later be required to make an identification; that they were 100 percent sure of their identification of him; and that their in-court identification was based upon their recollection of the robbery rather than their viewing of his photograph shortly after the robbery. This evidence established an independent basis for the officers' in-court identification. Id. at 621 (2).

Perkins argues that, under the component of the "totality of the circumstances" test concerning the accuracy of the witness' description of the criminal, there was a substantial likelihood of misidentification, in that the officers' prior description of defendant was inaccurate. Fagler stated in his police report that defendant was 5′11″ to 6′1″ and weighed approximately 200 pounds, and Zimbrick stated in his report that defendant weighed approximately 195 to 215 pounds, whereas defendant testified that he is 5′9″ tall and weighs 159 pounds. However, Fagler testified that it was winter and defendant was wearing bulky clothing in order to make himself look larger and thus more intimidating and that this could very easily make a 170 or 180-pound man look like he weighed 200 pounds.

Given this explanation, we cannot say that under the totality of the circumstances there was substantial likelihood of irreparable misidentification. "Short of that point, such evidence is for the jury to weigh." *Manson v. Brathwaite*, 432 U. S. 98, 116 (97 SC 2243, 53 LE2d 140) (1977).

2. Defendant contends that the court improperly sentenced him by not merging the sentences for *both* convictions of aggravated assault with the conviction of armed robbery.

A defendant may not be convicted of more than one crime if one crime is included in the other. OCGA § 16-1-7 (a) (1). Aggravated assault is not included in armed robbery as a matter of law, but it may be included as a matter of fact. *Hambrick v. State*, 256 Ga. 148, 150 (4) (344 SE2d 639) (1986). In *Hambrick*, the defendant's act of pointing the pistol at the victims was the act underlying both the convictions for attempted armed robbery and for aggravated assault, so the convictions of aggravated assault merged with the attempted armed robberies. Under the evidence in this case, the defendant's act of pointing the gun at Fagler was the act underlying the armed robbery of Zimbrick, and the robbery was completed before the defendant committed an aggravated assault upon Zimbrick by pointing the gun at him. Thus, the crimes of armed robbery and aggravated assault upon Zimbrick did not merge. *Harvey v. State*, 233 Ga. 41, 42 (1) (209 SE2d 587) (1974); *Lambert v. State*, 157 Ga. App. 275 (277 SE2d 66) (1981).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

Decided January 20, 1995.

*Rodney S. Zell,* for appellant.
*Lewis R. Slaton, District Attorney, Bill Fincher, Carl P. Greenberg, Assistant District Attorneys,* for appellee.