A05A1999. LEPPLA v. THE STATE.
(627 SE2d 794)

PHIPPS, Judge.

Gregory Leppla was indicted and tried for kidnapping with bodily injury of Cara Hyatt, aggravated assault on Hyatt and Patty Holland, and hijacking a motor vehicle. At a jury trial, Leppla was convicted of kidnapping with bodily injury and of the two counts of aggravated assault. He was found not guilty of motor vehicle hijacking. He was given a sentence of life imprisonment for kidnapping with bodily injury and a concurrent ten-year sentence for aggravated assault on Holland. His conviction of aggravated assault on Hyatt was merged into his kidnapping with bodily injury conviction for sentencing purposes.

Leppla appeals his convictions and the denial of his motions for new trial. He complains of the effectiveness of his trial attorney, and he challenges the sufficiency of the evidence to support the asportation element of his kidnapping conviction. Although Leppla has not carried his burden of showing ineffective assistance of counsel, his challenge to the sufficiency of the evidence to support his kidnapping conviction is meritorious. We, therefore, reverse that conviction and remand the case for resentencing; we affirm Leppla's remaining convictions.

Hyatt testified that on the evening of January 14, 2000, she stopped at a Kroger grocery store on her way home from work to get a birthday cake for her daughter. Upon returning to her two-door car, she put the cake on the floorboard of the passenger side of the car and then walked around the rear of the car to the driver's side. After she opened the door and started to get into the car, she was accosted by a man wearing a mask. He stuck a gun in her rib cage, grabbed her and

began to push her toward the car, and told her to "[s]hut up and get in the car." Hyatt testified that she resisted by bracing her back against the car door. The man kept yelling at her to get in the car, but she refused to do so and screamed for help. He then began to hit her in the head with the gun. As they struggled, he continued to hit her in the head with the gun. According to Hyatt, she realized she was bleeding as they lost their balance and fell together to the ground. He landed on top of her and kept hitting her.

As Leppla and Hyatt were struggling, Holland appeared in the Kroger parking lot and observed what was happening. When Holland ran to the scene, Leppla turned toward her, pointed the gun at her, and told her to leave. At about that time, several men in the parking lot came to Hyatt's assistance, pulled Leppla off her, and disarmed and subdued him. By that time, Hyatt was on the ground at the rear of the car. The mask was removed from Leppla's face, and he was identified as a Kroger employee.

Leppla testified in his defense that he had been drinking heavily at the time of the incident and had concocted an irrational plan to go to the Kroger store during off-duty hours and to scare customers away, thereby causing a drop-off in business through adverse publicity and a resultant lessening of his work responsibilities. Leppla admitted that he went to the store in possession of a pellet gun, a knife, a ski mask, and a pair of rubber gloves. Unfortunately for Hyatt, she was the first person he saw. Leppla testified that his intent was to scare her away by brandishing the gun, that he did not intend to abduct her or hijack the car, and that he lost control and began to hit her when she refused to get into her car.

When Corporal Horace Perry of the Forsyth County Sheriff's Office went to the Kroger the day after the incident, the store manager informed him that Leppla's car was in the parking lot. After verifying that the car belonged to Leppla, Perry had the vehicle impounded. The lead investigator in the case, Detective Bruce Brueggeman, obtained warrants to search Leppla's car and his residence. Flexible handcuffs and a knife were found in the car. Pellets and cartridges for the gun recovered from the crime scene were found in Leppla's residence, along with other latex gloves.

1. The trial court erred in denying Leppla's motion for directed verdict on the kidnapping charge.

Under OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."

Therefore, the elements of kidnapping are "(1) an illegal holding, (2) an overmastering of the victim's will, and (3) an asportation of the victim."[1]

Courts throughout the country have grappled with the difficult question of how much and what kind of asportation will suffice to support a kidnapping conviction.[2] The Model Penal Code states that the victim must have been moved "from his place of residence or business, or a substantial distance from the vicinity where he is found."[3] Under this approach, a kidnapping is complete when the victim has been forced to leave the security of one location and moved to another.[4] In other jurisdictions, various tests have evolved to determine whether a kidnapping conviction is sustainable where, as here, the defendant has been charged with kidnapping based on his movement of the victim during the commission of a separate offense.[5] The purpose of these tests is to preclude kidnapping convictions based on trivial changes of location having no bearing on the type of evil which a kidnapping statute is intended to prevent.[6]

The victim in *Brown v. State*[7] was a female police officer who was acting as a decoy while standing beside a public street. The defendants accosted her and dragged her a distance of 15 feet from the street into a vacant lot. Clearly, in *Brown*, the victim had been moved from the security of one location to a less secure location, albeit a short distance. This court thus found the evidence sufficient to support the defendants' kidnapping convictions. The court held that any unlawful asportation, "however slight," is sufficient to show the "taking" element.[8]

Later, in *Love v. State*,[9] the defendant was convicted of kidnapping with bodily injury by reason of having forced the victim from a seated position on a concrete wall to the ground several feet below before he raped her. A two-judge plurality of this court found the evidence sufficient to support the kidnapping conviction, citing *Brown* as authority for the proposition that only the slightest movement is

---

[1] Kurtz, Criminal Offenses and Defenses in Georgia (2004 ed.), p. 654.

[2] See LaFave, Substantive Criminal Law, § 18.1 (b) (2nd ed., 2003); Anno., Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping, 39 ALR5th 283 (1996).

[3] LaFave, supra, citing Model Penal Code § 212.1.

[4] Id.

[5] See 39 ALR5th 283, supra.

[6] See id.

[7] 132 Ga. App. 399 (208 SE2d 183) (1974).

[8] Id. at 401-402 (2).

[9] 190 Ga. App. 264 (378 SE2d 893) (1989).

required to constitute the element of asportation.[10] In a special concurrence, Judge (now Justice) Benham provided more explicit analysis. He reasoned:

> In the case sub judice, the "carrying away" was ever so slight, occurring when defendant dislodged the victim from the concrete wall and forced her to the ground several feet below, thereby removing her from a public place to a concealed place. Appellant would have us rule that for asportation to take place, the perpetrator must remove the victim to a "different location." "Asportation" does not require removal to a different location. [Cit.] However, in those cases where the movement involved is minimal, and the alleged kidnapping occurs in furtherance of some other criminal enterprise such as rape, the movement necessary to constitute "asportation" must be more than a mere positional change, e.g., from a standing to a supine position. It must be movement that is not merely incidental to the other criminal act, but movement designed to carry out better the criminal activity when, as here, there is movement from a place of visibility to a place of concealment.[11]

The defendant and victim in *Harshaw v. State*[12] were casual acquaintances who had dinner at the home of a mutual friend. The defendant convinced the victim to let him escort her to her home down an unfamiliar, poorly lit path. While on the path, he pushed her to the ground and raped her. Citing *Love*, this court found that evidence that the defendant had shoved the victim to the ground and struggled with her was sufficient to constitute asportation and authorize the conviction of kidnapping.[13] The court also noted that "[a]n abduction or taking by inducement, persuasion, or fraud can also support a finding of asportation. [Cit.]"[14]

The kidnapping victim in *Estes v. State*[15] was working the late shift at a Wal-Mart store. She parked her truck in the parking lot, got out of the vehicle, and saw the defendant Estes running toward her.

---

[10] Id. at 265 (1).
[11] Id. at 266.
[12] 222 Ga. App. 385 (474 SE2d 226) (1996).
[13] Id. at 386 (1).
[14] Id.
[15] 234 Ga. App. 150 (505 SE2d 840) (1998).

He grabbed her and told her to get back in the truck, pulling her "at most a single step" toward the truck.[16] We affirmed the kidnapping conviction, holding:

Estes' claim that any movement by the victim was merely incidental to the struggle, and thus constituted a mere positional change, is not supported by the evidence. The jury was authorized to conclude that Estes was trying to force the victim into her truck, and in fact succeeded in moving her a short distance toward that objective. Although Estes claims that this at most constitutes attempted kidnapping, the offense of kidnapping "is completed when the victim has been seized and asported to some degree." [Cit.] Because there was evidence that the victim was moved a short distance against her will, there was sufficient evidence of asportation to support Estes' kidnapping conviction.[17]

The defendant in *Woodson v. State*[18] forced his way into the victim's house and pursued her throughout the rooms of the house into the bedroom where he shoved the victim, pulled her to the floor, and raped her. Citing *Harshaw* and *Love*, this court found the evidence sufficient to support a kidnapping conviction, "[b]ecause Woodson shoved and pulled the victim to the floor and struggled with her."[19] Our Supreme Court granted certiorari and affirmed our decision, but disapproved our reasoning in both that case and in *Harshaw*.[20] The Supreme Court held that "shoving the victim, without moving her to a different location, was not the evidence that satisfied the requirement of asportation, nor was pulling her to the floor at a single location."[21] But the Court found that OCGA § 16-5-40 (a)'s asportation requirement was satisfied by evidence that the victim went from one room to another in response to threats by Woodson. The Court disapproved *Harshaw* to the extent that it stood "for the proposition that shoving the victim without moving her to a different location, or struggling with the victim, is evidence of asportation."[22] The Court held that in *Harshaw*, "the defendant's deceptive

---

[16] Id. at 151.
[17] Id.
[18] 242 Ga. App. 67 (530 SE2d 2) (2000).
[19] Id. at 69 (1) (footnote omitted).
[20] *Woodson v. State*, 273 Ga. 557 (544 SE2d 431) (2001).
[21] Id. at 558 (footnote omitted).
[22] Id. at 558, n. 1.

offer to show the victim a shortcut satisfied the statutory requirement that the defendant must abduct or steal away the victim."[23]

In *Phillips v. State*,[24] we later recognized that shoving a victim without moving her from one location to another, or merely pushing a victim to the ground, is not sufficient to satisfy the element of asportation; but we held that evidence — that the defendant had grabbed one of the kidnapping victims as she was trying to run out of a store and forced her back into the store, moving her approximately six to eight feet during the struggle — was sufficient.[25]

In *Griggs v. State*,[26] the defendant savagely attacked his former girlfriend. He was convicted of aggravated battery and kidnapping with bodily injury, among other things. We found the evidence sufficient to support the asportation element of the kidnapping offense, noting that the defendant had grabbed the victim by the hair, dragged her, and forcibly moved her around one of the rooms of the trailer.[27]

The state argues that the evidence here was sufficient to establish the asportation element of kidnapping, based on testimony showing that at the beginning of the attack Hyatt was standing at the driver's door of the car, that at the end of the attack she was lying on the ground at the rear of the car, and that she had therefore been moved a distance of several feet against her will. The dissent relies on testimony by Hyatt that Leppla "started pushing me in the car" and "kept pushing me in the car."

But immediately after Hyatt testified that Leppla "started pushing me in the car," she added that, "I took my back and braced my back against the door of my car." Unlike the victim in *Estes*, Hyatt did not testify that she took even a single step toward the car as a result of being pushed by Leppla in that direction. When asked about the direction Leppla was trying to move her during their struggle, Hyatt responded,

> I'm really not — you know, I'm not — basically it was either, you know, towards my car and — to push me in the car. But, you know, somehow we went — I mean it's like we wound up farther down the — from the door of my car down like the rear of my car, so . . . I can't really make out if he was pushing me or what, because I was fighting with him so much, so. . . .

---

[23] Id. at 558.

[24] 259 Ga. App. 331 (577 SE2d 25) (2003).

[25] Id. at 331-332 (1).

[26] 264 Ga. App. 636 (592 SE2d 168) (2003).

[27] Id. at 639.

The evidence, viewed in a light most favorable to the verdict, thus shows that, after brandishing a gun, Leppla tried to force Hyatt to get into her car through the open driver's door; that, instead of getting into the car, Hyatt braced her back against the door; that Leppla then began to hit her with the gun; and that the struggle that ensued propelled the two of them away from the car door toward the rear of the vehicle. Unlike the situations in *Love*, *Phillips*, and *Griggs*, Leppla did not carry Hyatt away, even "ever so slight[ly],"[28] to facilitate his commission of another crime. As in *Harshaw*, Leppla and Hyatt struggled and fell to the ground. *Woodson*'s disapproval of the reasoning employed by this court in *Harshaw* constitutes recognition of the fact that it simply defies common sense and sound legal reasoning to characterize this type of movement of the victim as a kidnapping. As a result, the evidence is insufficient to support Leppla's conviction of kidnapping with bodily injury under the law of Georgia (as well as under the law of every other jurisdiction in this country[29]).

2. Leppla claims ineffective assistance of trial counsel based on (a) counsel's failure to prosecute a motion to suppress the evidence seized from Leppla's car and house, (b) his failure to request a preliminary hearing, (c) his failure to interview certain witnesses, (d) his failure to provide statements of witnesses and police incident reports to Leppla to review in preparation to testify, and (e) his failure to present expert medical testimony regarding Leppla's inability to form any criminal intent due to his alcohol abuse problems.

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must prove that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. We affirm the trial court's decision on effective assistance of counsel unless the trial court's underlying findings are clearly erroneous.[30]

(a) When trial counsel's failure to prosecute a motion to suppress is the basis for a claim of ineffective assistance of counsel, the

---

[28] *Love*, supra, 190 Ga. App. at 266 (Benham, J., concurring specially).

[29] See n. 2, supra.

[30] *Davis v. State*, 267 Ga. App. 245, 245-246 (1) (599 SE2d 237) (2004) (citations and punctuation omitted).

defendant must make a strong showing that the damaging evidence would have been suppressed if counsel had prosecuted the motion.[31] Leppla has made no such showing. Moreover, given the overwhelming, undisputed evidence of his identity as the perpetrator, including his own admissions in his trial testimony, it does not appear that the result of the proceeding would have been any different if the items seized from his car and residence had been suppressed.

(b) Without trial counsel's testimony on the point, we cannot determine whether his failure to request a preliminary hearing was a trial tactic.[32] And even assuming that counsel was somehow ineffective in waiving such a hearing, no resulting harm or prejudice appears.[33]

(c) Although Leppla's trial attorney acknowledged at the hearing on Leppla's motion for new trial that he may not have interviewed some of the eyewitnesses before trial, his testimony authorized the court to find that he reviewed their statements to police. And Leppla has not shown any reasonable likelihood that the result of the proceeding would have been different if counsel had interviewed the witnesses.

(d) Although Leppla testified at the motion for new trial hearing that counsel never provided him with copies of witness statements or incident reports, counsel testified that he reviewed the contents of those documents with Leppla. The trial court's determination that counsel was not ineffective in this regard is not clearly erroneous.

(e) Because voluntary intoxication is not an excuse for a criminal act,[34] counsel is not chargeable with ineffective assistance for having failed to present a defense predicated on Leppla's lack of criminal intent due to his alcohol intoxication.

Therefore, Leppla's underlying convictions of aggravated assault are affirmed, his kidnapping with bodily injury conviction is reversed, and the case is remanded for resentencing.

*Judgment affirmed in part and reversed in part and case remanded. Ruffin, C. J., Johnson, P. J., and Mikell, J., concur. Andrews, P. J., Blackburn, P. J., and Barnes, J., dissent.*

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's conclusion that the

---

[31] See id. at 246 (2).

[32] *McClarity v. State*, 234 Ga. App. 348, 351 (3) (a) (506 SE2d 392) (1998).

[33] Id. at 351-352.

[34] *Rowe v. State*, 276 Ga. 800, 807 (7) (582 SE2d 119) (2003), citing OCGA § 16-3-4 (c).

evidence was insufficient to establish the asportation element on the charge of kidnapping with bodily injury. I concur in the remainder of the majority opinion.

As the majority opinion succinctly states, Leppla "stuck a gun in [the victim's] rib cage, grabbed her and began to push her toward the car, and told her to '[s]hut up and get in the car.'" The victim testified that Leppla "started pushing me in the car . . ." and "kept pushing me in the car." When the victim resisted being pushed into the car, Leppla pistol-whipped her in the face and head as Leppla and the victim moved from the position where the victim was standing near the front of the car to the position where she fell to the ground near the rear of the car. The victim testified that Leppla hit her repeatedly in the head with the butt of his gun until she eventually fell with her head "kind of like underneath" the car where she "could see like my tailpipe." The prosecutor asked the victim, "[W]as he trying to propel you in any particular direction?" And the victim responded: "[B]asically it was either . . . towards my car and — to push me in the car. But . . . somehow we went — I mean it's like we wound up farther down the — from the door of my car down like the rear of my car."

The majority concedes that evidence showed Leppla began to push the victim toward the car, and that, after the victim resisted being pushed into the car, evidence showed that the victim moved at least several feet from the front to the rear of the car while being pushed, threatened, or pistol-whipped by Leppla. Nevertheless, the majority construes the evidence to find that the victim did not give specific testimony that she took a single step toward the car as a result of being pushed by Leppla, and that any movement of the victim was related only to a struggle which "propelled the two of them away from the car door toward the rear of the vehicle." Accordingly, the majority finds that, even though the victim moved from one location to another during the struggle, the movement was incidental to or entirely related to an aggravated assault arising from the struggle, and therefore the movement was not evidence proving the asportation element on the kidnapping charge.

Pursuant to OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." An essential element of the kidnapping with bodily injury charge in this case was unlawful asportation (movement from one location to another) of the victim against her will. *Smith v. State*, 250 Ga. App. 465, 469 (552 SE2d 468) (2001). Where the evidence shows that, without moving the victim to another location, a defendant merely shoved the victim, struggled with the victim, or pulled the victim to the floor, this is not sufficient evidence of asportation to support a

conviction for kidnapping. *Woodson v. State*, 273 Ga. 557, 558 (544 SE2d 431) (2001). But where the evidence shows that the victim moved from one location to another by being pushed or shoved by the defendant, or moved in response to a threat from the defendant, this is evidence of asportation sufficient to support a kidnapping conviction, even where the movement was only slight or only a single step. *Smith*, 250 Ga. App. at 469 (pushing and shoving the victim from one location to another establishes asportation); *Woodson*, 273 Ga. at 558 (movement of victim from one location to another in response to defendant's threat establishes asportation); *Estes v. State*, 234 Ga. App. 150, 151 (505 SE2d 840) (1998) (victim's slight movement of single step establishes asportation); *Sharp v. State*, 255 Ga. App. 485, 487 (565 SE2d 841) (2002) (movement of victim from a seated position on a concrete block to dirt behind the block establishes asportation).

Under these principles, the evidence was sufficient to support the jury's guilty verdict on the charge of kidnapping with bodily injury. The evidence was sufficient to allow the jury to conclude that: (1) Leppla moved the victim a slight distance from one location to another against her will by pushing her in an effort to force her into the car, and (2) when the victim resisted these efforts, Leppla threatened her with additional physical violence and pistol-whipped her, thereby forcing the victim against her will to move again from an area near the front door of the car to the rear of the car, where she fell to the ground. Contrary to the majority's conclusion, evidence that Leppla assaulted the victim as he moved her from one location to another did not render the evidence of movement unrelated to the charge of kidnapping. Under the evidence presented, the jury was authorized to conclude, and obviously did conclude, that Leppla assaulted the victim while kidnapping her to force her to submit to the kidnapping. Instead of viewing the evidence in the light most favorable to the jury's guilty verdict on the kidnapping charge, as an appellate court is required to do, the majority improperly assumes the factfinding role of the jury and apparently finds that Leppla abandoned any intent to kidnap the victim when he assaulted her as she moved in response to the assault from one location to another.

The evidence was more than sufficient to allow the jury to conclude beyond a reasonable doubt that Leppla was guilty of the offense of kidnapping with bodily injury. The judgment of conviction entered on the jury's guilty verdict on that offense should be affirmed.

I am authorized to state that Presiding Judge Blackburn and Judge Barnes join in this dissent.

DECIDED JANUARY 23, 2006 —
RECONSIDERATION DENIED MARCH 1, 2006 — ▆▆▆▆▆▆▆▆

*James E. Hardy II*, for appellant.

*Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.