## A07A0434. GARZA v. THE STATE.
### (648 SE2d 84)

MILLER, Judge.

A jury convicted Joey Allen Garza of two counts of kidnapping, four counts of false imprisonment, and one count of aggravated assault. Before this Court, he challenges the sufficiency of the evidence as to his convictions for kidnapping and false imprisonment; the trial court's charge as to aggravated assault; the trial court's refusal to answer the jury's question as to whether a person could be falsely imprisoned while asleep; the sufficiency of the indictment as to the offense of aggravated assault; the trial court's refusal to merge a conviction of kidnapping with a conviction of false imprisonment; and the effectiveness of trial counsel. Finding such claims of error to be without merit, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. As an appellate court, we do not weigh the evidence or determine witness credibility. The standard of review is whether, based on the evidence of record, a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Byrd v. State*, 251 Ga. App. 83 (1) (553 SE2d 380) (2001).

So viewed, the evidence shows that on the evening of October 16, 2001, Garza gained entry into Angela Mendoza's residence on the pretext that he had left his wallet in her van. Once inside and while Mendoza's three children slept, he locked the door, drew a handgun

from his pants, placed the weapon against Mendoza's head, and threatened to shoot her if she failed to follow his instructions. Garza struck Mendoza in the head with the handgun as she attempted to push it aside, causing her to fall to the floor. Garza then bound Mendoza's wrists with electrician's tape, tied her ankles with a torn sheet, and helped her up, made her sit in a chair, and instructed her not to move. Later, Garza allowed Mendoza to move to the floor where she joined her infant daughter and feigned sleep. When Garza fell asleep, Mendoza and her two-year-old son escaped out of a window, and Mendoza called the police.

Upon their arrival, the police forcibly entered the locked residence, removed Mendoza's infant daughter from the premises, and negotiated the release of Mendoza's nine-year-old son, J. M., for a six-pack of beer. Subsequently, Garza threatened suicide but eventually surrendered to the police without incident. In statements to police, Garza explained that his conduct had been motivated by a desire to speak with his former girlfriend, who was Mendoza's cousin and babysitter.

At trial, other testimony established that as the police entered the residence, Garza awoke J. M., asked him if he wanted to play cops and robbers, and, while holding his shirt, ordered him to move to the back bedroom of the residence. Once there, Garza continued to restrain J. M. by his shirt while openly holding his handgun. Although Garza did not point the weapon at him, J. M. was "scared" because he believed the weapon had been used to kill his mother.

1. Garza contends that his conviction of kidnapping Mendoza cannot stand for lack of evidence showing asportation. He also claims that the evidence is insufficient to support his convictions for false imprisonment as to Mendoza's infant daughter and her two-year-old son, arguing the lack of evidence supporting the element of detention against their will since the children slept throughout the incident. We disagree as to both of these claims.

(a) Under OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." For there to be a kidnapping conviction, there must be some type of asportation, "however slight." *Brown v. State*, 132 Ga. App. 399, 402 (2) (208 SE2d 183) (1974).

> However, in those cases where the movement involved is minimal, and the alleged kidnapping occurs in furtherance of some other criminal enterprise . . . , the movement necessary to constitute "asportation" must be more than a mere positional change, e.g., from a standing to a supine position. It must be movement that is not merely incidental

to the other criminal act, but movement designed to carry out better the criminal activity. . . .

(Footnote omitted.) *Leppla v. State*, 277 Ga. App. 804, 807 (1) (627 SE2d 794) (2006). Here, although Mendoza moved only from a standing position to the floor after being struck, it is clear that such movement, though slight, materially facilitated what followed — Mendoza's false imprisonment as evidenced by Garza's actions in binding her wrists and ankles and confining her to a chair. Consequently, a rational trier of fact could have found Garza guilty of kidnapping Mendoza as charged.

(b) There also was evidence upon which a rational trier of fact could have found Garza guilty of the offense of false imprisonment as to Mendoza's infant daughter and her two-year-old son. "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a).

Here, there was evidence that Garza entered the residence brandishing a gun, tied Mendoza up after striking her with the weapon, demanding that she follow his instructions. Such evidence is sufficient to show false imprisonment as to Mendoza. *Phoukphanh v. State*, 256 Ga. App. 580 (569 SE2d 259) (2002). That the infant daughter and the two-year-old son slept through much of what occurred does not make it less a false imprisonment as to them. *Barnett v. State*, 244 Ga. App. 585, 589 (3) (536 SE2d 263) (2000) (failure to express consent or the lack thereof not dispositive of detention in fact). Moreover, one who is asleep and not conscious of an act does not consent to the act absent other evidence of consent. *Brown v. State*, 138 Ga. 814 (76 SE 379) (1912). Furthermore, because the children were under the age of consent, their detention was presumptively against their will. See *Donaldson v. State*, 244 Ga. App. 89, 90 (2), n. 3 (534 SE2d 839) (2000).

2. Garza claims that the trial court erred in refusing to answer the jury's question as to whether a person can be falsely imprisoned while asleep. Garza argues that such question raised a question of law necessary to the jury's determination of guilt or innocence. Again, we disagree.

"It is the province of the court to construe the law applicable in the trial of a criminal case, and of the jury to apply the law so construed to the facts in evidence." (Citation omitted.) *State v. Freeman*, 264 Ga. 276, 278 (444 SE2d 80) (1994). Here, the trial court correctly instructed the jury on the offense of false imprisonment under OCGA § 16-5-41 (a). See Division 1 (b), supra. We find that the jury was in a position to determine, as a matter of fact, that Garza had unlawfully detained Mendoza's infant daughter and two-year-old

son. Both children were plainly subject to the care and control of the mother on the facts, even had they been awake. Thus, in light of the evidence that the mother was not free to leave, the jury could determine that the children were also not free to leave. Accordingly, the trial court did not err in requiring the jury to reach its verdict without further instruction as to the applicable law.

3. Garza also contends that Count 9 of the indictment charging him with aggravated assault was fatally defective because it failed to put him on notice of the manner in which the offense was committed. "The appropriate method for questioning the sufficiency of form and substance of an indictment is by demurrer, and failure to demur operates as a waiver of the right to be tried by an indictment perfect in form and substance. [Cit.]" *Megar v. State*, 144 Ga. App. 564-565 (3) (241 SE2d 447) (1978). Such a demurrer is timely if made "prior to entry of the verdict. [Cit.]" *Mealor v. State*, 135 Ga. App. 682, 683 (1) (218 SE2d 683) (1975). This Garza failed to do. Accordingly, the instant claim of error is waived.

Even were it otherwise, however, we find no deficiency in Count 9 of the indictment charging Garza with aggravated assault "by mak[ing] an assault upon the person of . . . Mendoza with a certain Ruger .22 Cal. . . . Semi Automatic Pistol . . . , a deadly weapon and an object, device, and instrument which when used offensively against a person is likely to result in serious bodily injury." The foregoing charge of aggravated assault tracked the statutory language of the offense, contained the elements thereof, and gave Garza sufficient notice of the charge he needed to be prepared to defend. OCGA § 16-5-21 (a) (2); *State v. Tate*, 262 Ga. App. 311, 312 (1) (b) (585 SE2d 224) (2003).

4. Citing *Dukes v. State*, 265 Ga. 422 (457 SE2d 556) (1995), Garza also contends that the trial court erred in charging aggravated assault in a manner not charged in Count 9 of the indictment. We disagree.

> *Dukes* holds that if a trial court gives a jury charge on an entire Code section that specifies that a crime may be committed by more than one method, and if the indictment alleges that the defendant committed the crime by only one method, the deviation violates due process, unless: (a) a limiting instruction is given; or (b) under the evidence, there is no reasonable possibility that the jury convicted the defendant of the commission of the crime in a manner not charged in the indictment.

(Footnotes omitted.) *Johnson v. State*, 279 Ga. App. 669, 670-671 (632 SE2d 688) (2006). Here, the trial court did not charge the entire

aggravated assault statute. Rather, it defined aggravated assault as an "assault done in an aggravated manner," committed when a person assaults another with a deadly weapon as alleged in the indictment under OCGA § 16-5-21 (a) (2). See Division 3, supra (setting out Count 9 of the indictment). Thus, there was no reasonable probability that Garza was convicted of aggravated assault in a manner not charged in the indictment.

5. Further, Garza claims that his convictions for kidnapping and false imprisonment as to J. M. merge, as a matter of fact, foreclosing his conviction for the false imprisonment offense. This claim of error is also meritless.

In order to determine whether closely related offenses may be prosecuted and punished separately, we apply the "required evidence" test mandated by *Blockburger v. United States*, 284 U. S. 299, 304 (52 SC 180, 76 LE 306) (1932); *Drinkard v. Walker*, 281 Ga. 211, 216 (636 SE2d 530) (2006).

> Under the "required evidence" test, . . . the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . [T]he important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Punctuation and footnotes omitted.) *Drinkard*, supra, 281 Ga. at 215-216. "If one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge." (Citation and punctuation omitted.) *Kellibrew v. State*, 239 Ga. App. 783, 786 (4) (521 SE2d 921) (1999).

Here, the facts establish that J. M.'s false imprisonment was complete when Garza entered the residence and locked the door. The offense of kidnapping occurred thereafter when Garza moved J. M. to his bedroom inside the residence. Because the kidnapping and false imprisonment offenses were proven by different facts, the trial court did not err in holding that the crimes do not merge.

6. Finally, Garza contends that he received ineffective assistance of counsel in that trial counsel failed to investigate his mental health status as a possible affirmative defense and failed to demur to Count 9 of the indictment — aggravated assault. We disagree.

"To prevail on a claim of ineffective assistance of trial counsel, [a defendant] bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency." (Footnote omitted.) *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). Prejudice is shown by demonstrating "that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel. [Cits.]" *Allen v. State*, 277 Ga. 502, 503 (3) (591 SE2d 784) (2004). "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous. [Cit.]" *Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001).

"There is a strong presumption that trial counsel provided effective representation, and we will not find ineffectiveness if trial counsel's strategy and trial tactics were reasonable at the time." (Footnotes omitted.) *Welbon*, supra, 278 Ga. at 313 (2). While we generally presume that trial counsel's decisions were "made in the exercise of reasonable professional judgment ([cit.])," (*Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985)), we are mindful that "reasonable professional judgment requires proper investigation. [Cit.]" *Turpin v. Helmeci*, 271 Ga. 224, 226 (518 SE2d 887) (1999). Consequently, "[t]he right to reasonably effective counsel is violated when the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy." (Citation and punctuation omitted.) Id.

(a) The record shows that Garza had been sent to two State mental hospitals for evaluation and treatment following his arrest because he twice attempted to commit suicide shortly after being jailed. At the motion for new trial hearing, trial counsel testified that he had been made aware of Garza's mental health hospitalizations; that he reviewed Garza's medical records and concluded that nothing therein indicated the presence of a viable affirmative defense related to Garza's mental health at the time he committed the offenses; that neither Garza's medical records nor his pre-trial conversations with Garza indicated his incompetence to stand trial; and that, as a matter of strategy, he had chosen not to raise the mental health issue in the case to avoid irritating the jury.

Pretermitting whether trial counsel was deficient in failing to pursue a defense related to Garza's mental status, Garza has come forward with no evidence showing that such a defense was available to him. During Garza's sentencing hearing, new counsel for Garza stated in his place that although Garza's psychiatrists diagnosed him as hearing voices and suicidal, they concluded that "the voices do not command [Garza] to break the law or to do criminal acts." As a result, Garza has failed to show that a reasonable probability exists that the

outcome would have been different but for any deficient performance of trial counsel in failing to pursue a mental health defense.

(b) Inasmuch as we have determined that Count 9 of the indictment gave Garza proper notice of the charge of aggravated assault he was to defend (see Division 3, supra), trial counsel's failure to demur thereto was not ineffective assistance of counsel. The failure to make a meritless objection does not constitute ineffective assistance of counsel. *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005).

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MAY 25, 2007 —
RECONSIDERATION DENIED JUNE 20, 2007 —

*L. David Wolfe*, for appellant.
*Cecilia M. Cooper, District Attorney*, for appellee.