## A07A1740. MERCER v. THE STATE.
(658 SE2d 173)

MIKELL, Judge.

Jessie James Mercer, Jr., appeals from the denial of his motion for a new trial following his conviction of armed robbery (Count 1), kidnapping (Counts 2 and 5), and aggravated assault (Counts 3 and 4). Mercer was sentenced to serve 20 years on Count 1 and 15 years on Count 2, to be served consecutively, and 15 years each on Counts 3 through 5, to be served concurrently. Mercer's conviction was based on acts he committed against Richard Love and his wife, Parchando Love, during a home invasion. On appeal, Mercer contends that the evidence is insufficient to support his conviction of kidnapping Mr. Love (Count 2); that the trial court erred in refusing to strike the testimony of Mr. Love after he invoked his Fifth Amendment privilege against self-incrimination; and that his conviction of the aggravated assault of Mr. Love (Count 4) merges with his conviction of armed robbery of the same victim (Count 1). We affirm Mercer's conviction but remand for resentencing because Count 4 merges with Count 1.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. As an appellate court, we do not weigh the evidence or determine witness credibility. The standard of review is whether, based on the evidence of record, a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.[1]

Properly viewed, the evidence shows that after 10:00 p.m. on January 26, 2004, the Loves and their children were in bed when Mr. Love heard a loud "thump." He thought the noise came from his dogs in the back yard, but it was actually the sound of someone kicking in the front door of the house. Mrs. Love ran into the closet and activated an alarm while Mr. Love jumped under the bed to retrieve his wife's gun. At that moment, three intruders came upstairs into the Loves' bedroom and pointed guns at Mrs. Love's head. She begged the intruders not to hurt her; they placed her on the ground and repeatedly demanded to know where Mr. Love could be found. He then emerged from under the bed and asked them not to harm Mrs. Love. They threatened to kill Mr. Love.

---

[1] (Citation omitted.) *Garza v. State*, 285 Ga. App. 902 (648 SE2d 84) (2007), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Meanwhile, the alarm was beeping, and one of the intruders grabbed Mrs. Love, threw her against the aquarium in the bedroom, and told her "to turn the motherf—ing alarm off." Mrs. Love entered the code for "panic mode," which silently notified the police. One of the intruders then threw her back on the floor, and she started pleading for their lives. Mrs. Love testified that they said, "shut the f—k up, bitch; I'm gonna blow your brains out." The intruders then demanded to know the location of the safe.

Mr. Love testified that he did not use his wife's gun because it had only one bullet in the chamber, and he could see that there were three intruders. When he emerged from under the bed, he saw that they all had guns. Mr. Love testified that he did not see the intruders' faces because they immediately put him on the floor and taped up his arms and legs. The intruders asked where the money was in the house.

At some point, one of the intruders dragged Mrs. Love into the bathroom while another man held a gun on Mr. Love. While the man looked away, Mr. Love broke free of the tape, got on his knees, and prepared to lunge at the perpetrator. According to Mr. Love, the perpetrator turned around and said, "he probably saw me, I got to kill him." The man cocked the gun and put it against Mr. Love's head. One of the other intruders screamed, "no, don't kill him." The intruders started running around, and ultimately left. They took $5,000 that had been hidden under the mattress.

The Loves identified Mercer from a photographic lineup shown to them three days after the incident.

Mercer's co-defendant, George Roberts, Jr., who was sentenced to 15 years to serve for his role in the crime, testified that he and Mercer went to the Loves' house that night "to collect some money." Roberts drove the getaway car, while Mercer and two other men entered the Loves' home.

1. Mercer contends that his conviction of kidnapping Mr. Love (Count 2) cannot stand because the evidence fails to establish the essential element of asportation. We disagree.

Under OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." A kidnapping conviction requires proof of some movement of the victim, "however slight."[2]

> However, where the movement involved is minimal, and the alleged kidnapping occurs in furtherance of some other

---

[2] (Footnote omitted.) *Griffin v. State*, 282 Ga. 215, 219 (1) (b) (647 SE2d 36) (2007); *Brown v. State*, 132 Ga. App. 399, 402 (2) (208 SE2d 183) (1974).

criminal enterprise, in order to constitute "asportation" the movement must be more than a mere positional change of the victim incidental to the other criminal act; it must be movement, even if a positional change, designed to better carry out the criminal activity.[3]

Here, the evidence, construed most favorably to the state, shows that as soon as Mr. Love emerged from under the bed, he was placed down on the floor, and his arms and legs were bound. Although the movement of Mr. Love to the floor may have been slight, it is clear that such movement materially facilitated the criminal activity that followed — the aggravated assault of Mr. Love, as evidenced by the placement of a cocked gun against his head accompanied by the threat to kill him.[4] It follows that the evidence is sufficient beyond a reasonable doubt to support Mercer's conviction of kidnapping.

2. Mercer next asserts that the trial court erred in refusing to strike the testimony of Mr. Love after he invoked his Fifth Amendment privilege against self-incrimination during cross-examination. We disagree.

The issue arose when Mercer's counsel asked Mr. Love about the gun that was kept under the bed. Mr. Love testified that the gun was a Ruger .44. Defense counsel then asked Mr. Love, "Now prior to that night, when was the last time you had that gun in your possession?" Mr. Love declined to answer, invoking his Fifth Amendment privilege against self-incrimination. Defense counsel moved to strike all of his testimony, and the court denied the motion. Counsel then asked Mr. Love whether he had used it for target practice, and Mr. Love said "no." When counsel asked how the gun became loaded, Mr. Love again invoked the privilege. Defense counsel argued at trial that Mercer had been denied the right to a thorough and sifting cross-examination because he was not permitted to ask whether Mr. Love was permitted to possess a weapon and if not, why not. The prosecutor argued that defense counsel was trying to impeach the witness's character without a certified copy of any conviction, which counsel admitted that he was unable to produce.

The Supreme Court laid down the rule on this issue in 1969:

[W]hen a witness declines to answer on cross examination certain pertinent questions relevant to a matter testified about by the witness on direct examination, all of the witness'

---

[3] *Lyons v. State*, 282 Ga. 588, 591 (1) (652 SE2d 525) (2007), citing *Garza*, supra at 903-904 (1) (a); *Leppla v. State*, 277 Ga. App. 804, 807 (1) (627 SE2d 794) (2006).

[4] See *Garza*, supra (movement of victim from standing position to floor materially facilitated false imprisonment).

testimony on the *same subject matter* should be stricken. . . . In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him.[5]

The decision to limit the extent of cross-examination of a witness called against the defendant so as to curtail an inquiry that is not relevant or material lies within the sound discretion of the trial court, and that decision will not be disturbed on appeal unless manifestly abused.[6] In the case at bar, the trial court did not abuse its discretion in refusing to strike Mr. Love's testimony. The questions which defense counsel sought to ask Mr. Love concerning the weapon under his bed dealt with collateral matters that had occurred prior to the commission of the crimes for which Mercer was on trial. Mr. Love testified on direct examination that he went under the bed to get the gun, but he did not use it because there was only one bullet in the chamber. Whether or not Mr. Love was legally permitted to possess the weapon was irrelevant. Consequently, this enumeration of error fails.

3. Finally, Mercer argues that his conviction of aggravated assault with intent to rob Mr. Love (Count 4) merges with his conviction of armed robbery of Mr. Love (Count 1). We agree.

"A defendant may not be convicted of more than one crime if one crime is included in the other. OCGA § 16-1-7 (a) (1). Aggravated assault is not included in armed robbery as a matter of law, but it may be included as a matter of fact."[7] To determine whether one crime is included in another as a matter of fact, we apply the "required evidence" test adopted recently by our Supreme Court.[8] Under this test,

---

[5] (Citations omitted; emphasis in original.) *Smith v. State*, 225 Ga. 328, 331, 333 (7) (168 SE2d 587) (1969). Accord *Cody v. State*, 278 Ga. 779, 780-781 (2) (609 SE2d 320) (2004).

[6] *Holloway v. State*, 283 Ga. App. 823, 825 (643 SE2d 286) (2007).

[7] (Citation omitted.) *Perkins v. State*, 216 Ga. App. 118, 120 (2) (453 SE2d 135) (1995).

[8] *Drinkard v. Walker*, 281 Ga. 211, 214 (636 SE2d 530) (2006). The Supreme Court stated that the test specifically applies to determine whether one crime is included in another within

the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . [T]he important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.[9]

"Aggravated assault with intent to rob requires the reasonable apprehension of receiving bodily injury and proof of the intent to rob the victim."[10] Armed robbery is the taking of the property of another from the person or the immediate presence of another by use of an offensive weapon, with the intent to commit theft.[11] As we have noted, "it is possible to first commit aggravated assault by frightening the victim with a weapon and immediately thereafter to commit armed robbery by proceeding to use the weapon to rob the victim."[12] But in this case, with regard to Count 4, there was no evidence that the perpetrators used the gun against Mr. Love prior to demanding money from him; he testified that the perpetrators demanded money after he emerged from under the bed.[13] Thus, all of the facts used to prove the offense of aggravated assault with intent to rob were used up in proving the armed robbery. Merger was required. Therefore, we vacate the sentence imposed under Count 4 and remand the case for resentencing, with directions to merge Count 4 into Count 1.

*Judgment affirmed, sentence vacated in part and case remanded for resentencing. Johnson, P. J., concurs, and Phipps, J., concurs and concurs specially.*

---

the meaning of OCGA § 16-1-6 (1), and we presume it applies to OCGA § 16-1-7 (a) (1) as well. See id. at 216, n. 32. See also *Garza*, supra at 906 (5).

[9] (Punctuation and footnotes omitted.) *Drinkard*, supra at 215-216.

[10] (Punctuation and footnote omitted.) *Adcock v. State*, 279 Ga. App. 473, 475 (5) (b) (631 SE2d 494) (2006); OCGA § 16-5-21 (a) (1), (2).

[11] OCGA § 16-8-41 (a).

[12] *Young v. State*, 272 Ga. App. 304, 308 (2) (612 SE2d 118) (2005), citing *Blocker v. State*, 265 Ga. App. 846, 848 (2) (a) (595 SE2d 654) (2004) (aggravated assault conviction did not merge into armed robbery conviction where defendant pointed gun at victim and ordered him to kneel, causing reasonable apprehension of injury; then defendant demanded victim's property).

[13] See *Curtis v. State*, 275 Ga. 576, 579 (2) (571 SE2d 376) (2002) (aggravated assault conviction merged into armed robbery conviction where there was "no evidence that [the defendant] made any other use of the gun other than to take control of the car"); *Young*, supra (three assailants used gun to rob victim; aggravated assault conviction and armed robbery conviction merged).

PHIPPS, Judge, concurring specially in Division 1 and fully in Divisions 2 and 3.

Our kidnapping statute, OCGA § 16-5-40 (a), states that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."

Although we have held that the asportation element of kidnapping is satisfied by the slightest movement,[14] our Supreme Court in *Woodson v. State*[15] recognized that "shoving the victim, without moving her to a different location, was not the evidence that satisfied the requirement of asportation, nor was pulling her to the floor at a single location [and attempting to rape her]."[16]

As stated by Judge (now Justice) Benham in his special concurrence in *Love v. State*:[17]

[I]n those cases where the movement involved is minimal, and the alleged kidnapping occurs in furtherance of some other criminal enterprise such as rape, the movement necessary to constitute 'asportation' must be more than a mere positional change, e.g., from a standing to a supine position.[18]

In this case, although the majority does not address this point, the state claims that the evidence supporting Mercer's conviction of kidnapping Mr. Love shows more than a change from a standing to a supine position. In this regard, the state argues that the evidence establishes that Mr. Love was forced from the side of his bed to the foot of the bed. But a review of Mr. Love's testimony shows this argument to be without merit. He testified only that after he came out from under the bed, he got down on the floor in compliance with his assailants' instructions and that they taped him up and dragged his wife "over there to where I was" at the foot of the bed. Mr. Love later testified, "I was up under the bed and when I got up, I immediately got back down on the ground." Although Mr. Love did not specifically testify as to which side of the bed he came out from under, neither did he testify that he was moved in any way other than being told to get back down on the floor; and he testified that when his wife was thereafter dragged to his location in the room, he was at the foot of the bed.

---

[14] *Mullins v. State*, 280 Ga. App. 689, 690-691 (1) (634 SE2d 850) (2006) and cits.

[15] 273 Ga. 557 (544 SE2d 431) (2001).

[16] Id. at 558 (footnote omitted).

[17] 190 Ga. App. 264 (378 SE2d 893) (1989), overruled in part on other grounds, *Drinkard v. Walker*, 281 Ga. 211, 217, n. 38 (636 SE2d 530) (2006).

[18] *Love v. State*, supra at 266.

In *Lyons v. State*,[19] our Supreme Court, without mentioning *Woodson*, has recently held that evidence that the defendants forced the victim at gunpoint from a standing position to lying on the ground so that they could rob and murder him authorized the jury to find asportation to support the charge of kidnapping. The Court in *Lyons* thus held that "movement, even if a positional change" establishes the element of asportation if the movement is "designed to better carry out the criminal activity [that followed]."[20]

In reliance on *Lyons*, the majority in this case affirms Mercer's conviction of kidnapping Mr. Love because the movement of him to the floor materially facilitated the criminal activity that followed, i.e., the binding of his arms and legs followed by the placement of a cocked gun against his head accompanied by a threat to kill him.

Although the binding of Mr. Love's arms and legs constituted false imprisonment, and the placement of the cocked gun against his head along with the threat to kill him constituted aggravated assault, I do not see how merely forcing a person from a standing to a supine position without any additional movement constitutes an abduction or stealing away as expressly required by our kidnapping statute. Although *Lyons* sanctions the result the majority reaches, in my opinion the result is contrary to what was held in *Woodson*.

DECIDED FEBRUARY 14, 2008.

*John A. Beall IV*, for appellant.
*Scott L. Ballard, District Attorney*, for appellee.

---

[19] 282 Ga. 588, 591-592 (1) (652 SE2d 525) (2007).
[20] Id. at 591.