S13A0596. SELLARS v. EVANS.
(745 SE2d 643)

MELTON, Justice.

Following a February 1998 jury trial, Gabriel Lee Evans was found guilty of kidnapping with bodily injury, kidnapping, aggravated assault, and possession of a firearm by a convicted felon in connection with the beating of Aretha Perkins. Evans' convictions were upheld on appeal (*Evans v. State*, 240 Ga. App. 215 (522 SE2d 506) (1999)), and, after filing an unsuccessful habeas petition to challenge his conviction in July 2001, on November 20, 2009, Evans filed a second habeas petition, this time seeking relief based on this Court's then-controlling decision in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), which established new factors for assessing the asportation element as required for kidnapping.[1] Analyzing the *Garza* factors, the habeas court granted relief, finding that the duration of the movement of the victim was short, the movement was incidental to the aggravated assault, the movement appeared to be an

---

[1] *Garza* ultimately held that, with respect to the asportation element of Georgia's pre-2009 kidnapping statute, the movement necessary to establish asportation must be more than "merely incidental" to other criminal activity, and four judicially created factors must be considered before a court can conclude that more than "merely incidental" movement had occurred. Id. at 702 (1). *Garza* has since been superseded by statute for offenses occurring after July 1, 2009. OCGA § 16-5-40 (b) (2). However, because the rule created in *Garza* constituted a substantive change in the law with respect to the elements required to prove the crime of kidnapping at the time that the case was decided, the rule became retroactively applicable to cases such as the instant case. See, e.g., *Hammond v. State*, 289 Ga. 142, 143 (1) (710 SE2d 124) (2011) (A substantive change in case law "includes decisions that remove certain conduct from the reach of criminal statutes") (citation omitted).

inherent part of the aggravated assault, and the movement did not place the victim in more danger than she was already in at that point, and set aside the conviction and sentence for kidnapping with bodily injury. The warden appeals from the habeas court's ruling, and, for the reasons that follow, we affirm.

Viewed in the light most favorable to support the verdict, the record reveals that:

> Evans and two other young men went to a known crack and prostitution house where Perkins had been staying for a few days. Perkins, who answered the door, refused to admit the three young men. They later returned, were admitted by another person, and began to beat Perkins in the front room. Evans had a handgun which he gave to one of the other two, Quinton Williams. Williams struck Perkins with the pistol, then Evans took the gun back and also hit her with it. After each of the three men had punched and kicked Perkins, they carried or dragged her out the front door and continued to beat her outside the house. The three men then left in a car, leaving Perkins on the ground. Perkins testified that during the beating she considered trying to escape through the front door; she did not have the opportunity to do so before she was dragged out.

*Evans*, supra, 240 Ga. App. at 215-216 (1).

As explained more fully below, these facts do not establish that the asportation requirement of *Garza* had been met. Under *Garza*, the question whether asportation was more than "merely incidental" to another crime is decided based on the consideration of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, supra, 284 Ga. at 702 (1).

Even though the satisfaction of all four factors is not required in order for the evidence to support a proper finding of asportation under *Garza* (see *Brown v. State*, 288 Ga. 902 (3) (708 SE2d 294) (2011)), the record here does not support the conclusion that enough of the *Garza* factors were met in this case to warrant a finding of asportation. As an initial matter, pretermitting the question whether

the movement here took place for a sufficiently long period of time (the evidence does not indicate exactly how long the duration of the movement was), it cannot be reasonably said that the movement of the victim was entirely separate from, and not an inherent part of, the aggravated assault. Indeed, the movement of the victim occurred as a part of a relentless beating that occurred both inside and just outside of the house from which the victim had been removed. See *In the Interest of A. B.*, 296 Ga. App. 350, 352 (2) (674 SE2d 401) (2009) (where assailants hit victim in the head, dragged her into her neighbor's yard, and forcefully took her purse, movement of the victim "was an inherent part of the robbery and aggravated assault"). Furthermore, there is nothing to suggest that the movement of the victim presented a significant danger to her that was *independent of* the aggravated assault, as the victim was never isolated or somehow exposed to some independent danger outside of the danger that she was already being exposed to from the aggravated assault itself. See *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (kidnapping statute is "intended to address 'movement serving to substantially isolate the victim from protection or rescue' ").[2] Accordingly, under *Garza*, the movement of the victim here was merely incidental to the aggravated assault, and the habeas court correctly concluded that the facts of this case did not support a finding of asportation.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 1, 2013.

*Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellant.
*Zell & Zell, Rodney S. Zell,* for appellee.

---

[2] In fact, rather than exposing the victim to potentially more danger by isolating her, the assailants only increased the victim's potential ability to call for help by continuing the assault in a more open outdoor area where she could have been exposed to more people who may have been able to help her.