**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 15, 2015**

# In the Court of Appeals of Georgia

A15A0020. WHITE v. THE STATE.

MCMILLIAN, Judge.

In March 1997, Michael Jerome White was convicted by a jury of armed robbery, kidnapping with bodily injury, and burglary. The trial court subsequently granted White's June 16, 2014 pro se motion for out-of-time appeal, and this appeal followed. White asserts on appeal that the trial court erred in overruling his counsel's objections to the court's questioning of the victim and that the evidence was insufficient to support his convictions. We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence showed that on August 16, 1996, at around 9:00 p.m., 63-year-old Jack Morris left his place of business in his truck and drove home after a quick stop at a store. When Morris

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

arrived home, he went inside and placed his briefcase on the living room sofa and turned on lights inside and outside of the house. When Morris went back outside to retrieve his mail, White confronted him, put a gun to his head, and ordered him to open his truck door. After searching the truck, White forced Morris back inside his house. White grabbed the briefcase off the sofa in the living room and took Morris and his briefcase to the dining room. White opened the briefcase, scattered the papers inside, and kept asking where the money was. At that point, White took Morris's ring, watch, and a small caliber handgun from the briefcase and put them in his pocket. He also demanded Morris's wallet and took $40 to $45 and credit cards from inside. White then forced Morris into the kitchen and from there, into the den where he demanded that Morris unlock his gun cabinet. He directed Morris to take the rifles and shotguns out of the cabinet and lay them on the floor, and he told Morris to remove the ammunition and put it in a plastic bag, which Morris did.

Next, White forced Morris into the back bedroom of the house and then into the front bedroom. White ordered Morris to lay down on the bed and then snatched the telephone cord from the wall. White put a pillow over Morris's head, put the gun next to the pillow, and fired. White left the room, and Morris, who had survived the gunshot, retrieved another gun that he kept under his mattress and followed White out

2

of the bedroom. Morris found White at his front door with a stack of guns in front of him. When White turned to face him, Morris fired his gun. White crawled toward the dining room then got up and ran into the kitchen. Morris then fired a second shot. He heard White drop the bag of ammunition and heard the back door slam. Morris went to the back door and locked it, and after locking the front door, he called police. The gunshot had entered Morris's left chest, injuring his chest and lung and fracturing multiple ribs. Morris underwent surgery to treat his injuries and to remove the bullet. He remained in intensive care for ten days.

After their arrests, White and his co-defendant, Alvin Jones, told police that they had spotted Morris leaving the mall and followed him to the store and then home in order to rob him. White admitted that he had confronted Morris with a gun outside his house, forced him back inside, walked him around the house, and then forced him to remove the guns from the cabinet. White also admitted to hitting Morris in the head with the gun and to shooting him but said that occurred because they were struggling. Afterward, White and Jones drove to Darien, Georgia, where White hid some guns and threw the shirt he was wearing out the car window. Police later recovered the shirt, and the blood on it was identified as belonging to Morris. White took police to the location where he hid the guns, and one of the guns recovered was identified as

the gun used to shoot Morris and another gun was identified as belonging to Morris. The evidence at trial also showed that White had pawned Morris's ring at a pawn shop the day after the incident.

White testified at trial and admitted, inter alia, that he was at Morris's house on the day of the incident with a gun; that he intended to steal something when he went into the house; that he ordered Morris to open the gun cabinet, take the guns out and put the ammunition in the bag; that he took Morris's ring and pawned it; that he shot Morris; that afterward he went to Darien to hide the guns; and that his shirt was thrown out the window on the way.

1. White asserts that the trial court erred in overruling his counsel's objection to the court's own questions posed to Morris at the end of his testimony.[2] The trial judge asked Morris whether he gave White or his accomplice authority to come to his house and enter his house, to which Morris replied in the negative. And the trial court asked whether White or the accomplice exhibited any lawful authority to hold him, to which Morris replied, "No, sir."

---

[2] Although White asserts on appeal that this exchange occurred at the close of the State's case, this exchange actually occurred at the end of Morris's testimony. Morris was the first of sixteen witnesses presented by the State at White's two-day trial.

White's attorney objected to this questioning arguing the State "had failed to elicit material evidence to indicate the elements of the offense."[3] He stated that he had been planning to raise a motion for directed verdict on this basis. He objected to the court's asking questions to provide elements that the State had failed to prove in its direct or redirect of Morris.

It is well settled that "[a] trial judge may propound questions to a witness to develop the truth of the case or to clarify testimony, and the extent of such an examination is a matter for the trial court's discretion." (Citation omitted.) *Finley v. State,* 286 Ga. 47, 51 (9) (685 SE2d 258) (2009). See also *Dickens v. State*, 280 Ga. 320, 323-324 (3) (627 SE2d 587) (2006). And because the transcript demonstrates no improper expression or intimation of opinion by the trial court in violation of OCGA § 17-8-57, we find no error.

2. White also asserts that the evidence was insufficient to support his convictions for armed robbery, burglary and kidnapping. On appeal, this Court "does not weigh evidence or resolve conflicts in trial testimony." (Citation and punctuation omitted.) *Hargrave v. State*, 311 Ga. App. 852, 855 (2) (717 SE2d 485) (2011).

---

[3] Although White's trial counsel did not identify the offense to which he was referring, White identifies the offenses on appeal as burglary and kidnapping.

Rather, this Court "can only review the evidence to determine if there is any evidence to support the verdict." *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978).

Thus, to the extent that White asserts that his convictions are against the weight of the evidence, we note that "such an argument may only be made to a trial court in a motion for new trial, not to an appellate court on appeal. We do not have the discretion to grant a new trial on these grounds." (Citations and punctuation omitted.) *Hughes v. State*, 297 Ga. App. 581, 582 (1) (677 SE2d 674) (2009). See also *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978).

(a) Under OCGA § 16-8-41(a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" We find the record contains ample evidence to support White's conviction for armed robbery. The evidence showed that White and Jones followed Morris home for the express purpose of robbing Morris and that White pointed his gun at Morris's head and took his ring, his watch, money, credit cards and guns.

(b) At the pertinent time, the burglary statute provided that "[a] person commits the offense of burglary . . . when, without authority and with the intent to commit a felony or theft therein, he enters or remains within [the] dwelling house of another.

6

. . ." OCGA § 16-7-1 (b) (Ga. L. 1980, p. 770, § 1). See also *State v. Newton*, 294 Ga. 767, 770-771 (755 SE2d 786) (2014). Morris testified that White forced him inside at gunpoint, thus raising an inference that White's entry into the house was without Morris's authority, and as noted above, Morris further testified that he had not given White the authority to enter his house. Additionally, White admitted at trial that he entered the house with the intent to steal from Morris. This and other evidence at trial was sufficient to support White's burglary conviction.

(c) White also asserts that the evidence was insufficient to support his conviction for kidnapping with bodily injury. We disagree.

OCGA § 16-5-40 (a) provides that a person commits the offense of kidnapping when he "abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." Additionally, "[k]idnapping with bodily injury . . . requires that an injury, no matter how slight, occur during the kidnapping." (Citation and punctuation omitted.) *Mayberry v. State*, 301 Ga. App. 503, 512 (6) (687 SE2d 893) (2009). See also *Phillips v. State*, 284 Ga. App. 683, 685 (1) (b) (644 SE2d 535) (2007); *Nelson v. State*, 278 Ga. App. 548, 551 (3) (629 SE2d 410) (2006).

In considering this argument, we must examine the evidence at trial "in light of the statutory definition of kidnapping that was in force at the time of [White's] crimes rather than the broader definition of kidnapping established by the [2009] amendment to the kidnapping statute by the General Assembly." *Tate v. State*, 287 Ga. 364, 365-366 (1) (a) (695 SE2d 591) (2010). See also OCGA § 16-5-40; Ga. L. 2009, p. 88, § 1; *Dixon v. State*, 300 Ga. App. 183, 184, n. 3 (684 SE2d 679) (2009) (2009 amendment to the kidnapping statute applies only to crimes committed on or after the revision's effective date of July 1, 2009).

Accordingly, we must apply the test set out in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), for analyzing the asportation, or movement, element of kidnapping. See *Wilkerson v. Hart*, 294 Ga. 605, 607-608 (2) (755 SE2d 192) (2014); *Hammond v. State*, 289 Ga. 142, 144 (1) (710 SE2d 124) (2011) (*Garza* standard applies retroactively to pre-2009 kidnapping charge).

> *Garza* sets out four factors that should be considered in determining whether the asportation element of kidnapping is met: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense. Id.

8

Here, we have no evidence of the duration of the movement, but we find that the last instance of asportation, from the back bedroom to the front bedroom, occurred during the commission of a separate offense and not as an inherent part of another charged offense. When White forced Morris into the second bedroom, the offenses of robbery and burglary were complete. White had already entered Morris's house with the intent to steal from him and had already forcibly taken his property from him. No evidence exists that White took anything from either of the bedrooms. Instead, he took Morris into the bedroom, forced him to lay down on the bed, pulled the telephone cord out of the wall, put a pillow over Morris's face, and shot him. Based on this evidence, we conclude that movement itself presented a significant danger to the victim independent of the danger posed by the robbery and burglary. The jury could have inferred that White took Morris into the bedroom and cut off his source of communication with others in order to isolate him and to make it easier to inflict bodily injury. See *Upton v. Hardeman*, 291 Ga. 720, 722 (732 SE2d 425) (2012); *Hammond*, 289 Ga. at 145 (2). Compare *Sellers v. State*, 325 Ga. App. 837, 844 (2) (755 SE2d 232) (2014) (*Garza* factor not met where act of moving victim to bedroom for the purpose of binding and raping her was an inherent part of the separate offense of rape).

9

Accordingly, we affirm White's convictions.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur*.