304 Ga. 219
FINAL COPY

S18A0748. MERCER v. JOHNSON.

HINES, Chief Justice.

In 2004, appellant Jessie Mercer was convicted of the kidnapping of Richard Love and his wife, Parchando Love, as well as armed robbery and two counts of aggravated assault. On appeal, appellant challenged the sufficiency of the evidence to support his conviction for kidnapping Mr. Love, but not for kidnapping Mrs. Love. Specifically, he contended that the State failed to prove the element of asportation, but the Court of Appeals rejected that contention. See *Mercer v. State*, 289 Ga. App. 606 (658 SE2d 173) (2008). In 2011, appellant filed a habeas corpus petition alleging that the evidence was insufficient to support either of his kidnapping convictions under the new standard for determining asportation set forth in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008).[1] On June 29, 2016, the habeas court denied the petition.

---

[1] Although *Garza* was decided about nine months after the Court of Appeals affirmed Mercer's convictions, it effected a substantive change in the law for determining asportation and thus applies retroactively to appellant's

We subsequently granted appellant's application for a certificate of probable cause to appeal and now reverse the habeas court's judgment.

1. Under *Garza*, a court considers four factors in determining whether the movement of the victim constitutes asportation sufficient to sustain a kidnapping conviction. Those factors are:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Gonzalez v. Hart*, 297 Ga. 670, 672 (777 SE2d 456) (2015). "These factors are considered as a whole; it is not necessary that all four factors weigh in favor of asportation." *Peoples v. State*, 295 Ga. 44, 49 (2) (757 SE2d 646) (2014). "What must be kept in mind is the purpose of the *Garza* test, which is to determine whether the movement in question served to substantially isolate the victim from protection or rescue, the evil which the kidnapping statute was originally intended to address." *Gonzalez,* 297 Ga. at 672.

---

habeas case. See *Sellars v. Evans*, 293 Ga. 346, 346, n. 1 (745 SE2d 643) (2013). *Garza*, however, has been superseded by statute for kidnapping offenses committed on or after July 1, 2009. See OCGA § 16-5-40; *Hammond v. State*, 289 Ga. 142, 143, n. 2 (710 SE2d 124) (2011).

2. With these principles in mind, we turn now to the evidence of the movement of the Loves and whether it is sufficient to establish asportation for the two kidnapping convictions. The evidence shows that three armed intruders, including appellant and Rasaul Rayshad,[2] broke into the Loves' home on the night of January 26, 2004, and then went upstairs and entered their bedroom. See *Mercer*, 289 Ga. App. at 606. They pointed handguns at the Loves, placed both of them on the floor, and taped up their arms and legs. See id. at 606-607. Mrs. Love had turned on an alarm before the intruders entered the bedroom, and the intruders pulled her up and pushed her against an aquarium in order to have her turn off the alarm.

The driver of the intruders' get-away car said that the intruders went to the Loves' house to collect money that the Loves owed Rayshad. The Loves sold cars for a living and, either the day of the intrusion or shortly before it, they sold a Cadillac for $5,000 and hid the money under a mattress in their bedroom.

---

[2] Rayshad was tried separately from appellant and was convicted, among other crimes, of two counts of kidnapping the Loves. The Court of Appeals decided Rayshad's appeal about a month after our *Garza* decision. Applying *Garza*, the court reversed both of the kidnapping convictions. See *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008).

According to Mrs. Love, it was not unusual for the couple to have that type of money in the house.  At some point during the home invasion, the intruders asked the Loves "where's the money at," and they demanded to know if the couple had a safe in the house.  After Mr. Love told them that there was a safe in the house, one of the intruders left the bedroom and attempted to find it. When he could not, an intruder threatened to kill Mrs. Love.  She then told them that the safe was in a closet on the other side of the bathroom that adjoined the couple's bedroom, and she volunteered to show it to them.  She also told them that the safe only had documents in it.  Appellant then dragged Mrs. Love  25 to 30 feet to the safe.  Finding no money in the safe, appellant dragged Mrs. Love back to the bedroom where Mr. Love and the other intruders were located. At some point, either Mr. or Mrs. Love told the intruders about the money under the mattress, which they took.  The record is silent on exactly when the money was taken.[3]  Mr. Love, however, testified that the intruders only left after dragging Mrs. Love back to the bedroom from the safe.

---

[3] In Rayshad's appeal, the Court of Appeals said that the evidence at his separate trial showed that, after Mrs. Love was dragged to the safe and back to the bedroom, she told the intruders about the money under the mattress, which they then took and left the house.  See *Rayshad*, 295 Ga. at 30.

4

(a) We turn first to whether the movement of Mr. Love, which consisted only of moving him from a standing position to the floor, was sufficient to constitute asportation. Mr. Love's movement, which took place soon after the intruders entered the couple's bedroom, was of an extremely short duration and occurred during the ongoing armed robbery. Moreover, this movement did not present "a significant danger to the victim independent of the danger posed" by the armed robbery, during which the intruders were constantly pointing their handguns at the Loves, and did not serve "to substantially isolate the victim from protection or rescue." *Gonzalez,* 297 Ga. at 672. Accordingly, this movement did not constitute the asportation necessary to support appellant's conviction for kidnapping Mr. Love. See id. at 673-674 (holding that the act of pulling victim by the hair as she was trying to exit the door of an apartment and throwing her against a wall was insufficient to establish asportation; the movement was of minimal duration, occurred during the commission of and as an inherent part of the crimes of aggravated assault and family violence battery, and did not present a significant danger to the victim that was independent of family violence battery); *Garza*, 284 Ga. at 703-704 (2) (concluding that the movement of one victim from a standing position to the floor and then to a chair

5

was insufficient to establish asportation); id. at 701 (citing to the decision of the Court of Appeals in *Mercer* and noting with approval that many other jurisdictions would view the facts supporting Mercer's conviction for kidnapping Mr. Love as "not sufficient to sustain a kidnapping conviction").

(b) With regard to Mrs. Love, the record shows that there were several movements of her that are insufficient to establish asportation, largely for the same reasons that the evidence was insufficient to establish asportation regarding Mr. Love. Those movements include the intruders placing Mrs. Love on the floor and then pulling her up and pushing her against an aquarium in order to have her turn off the house alarm. Her movement to the safe and back to the bedroom is stronger evidence of asportation, but nevertheless insufficient. First, that movement was of short duration. See *Levin v. Morales*, 295 Ga. 781, 783 (764 SE2d 145) (2014) (describing movements from a bedroom in a "small duplex apartment" to various places, including to the living room, the back door, the kitchen, and the bathroom, each time going back to the bedroom, as "of a short duration"); *Peoples*, 295 Ga. at 46 (1) (b), 49-50 (2) (concluding that the movement of a victim from the front door to a bathroom that was down a hallway was of short duration); *Henderson v. State*, 285 Ga. 240, 244-245 (5)

6

(675 SE2d 28) (2009) (saying that "the movement of the victims from one room to another within the duplex was of minimal duration"); *Garza*, 284 Ga. at 704 (3) (describing both the movement of a victim from one room in a house to an adjoining bedroom and then another movement of that victim from that bedroom down a hallway and back to the bedroom as of "short duration").

Moreover, the second element of the *Garza* test — whether the movement occurred while other crimes were in progress — does not support a finding of asportation. We have held that this element supports asportation when the offenses occur either before or after the movement of the victim. See *Upton v. Hardeman*, 291 Ga. 720, 721, n. 4 (732 SE2d 425) (2012) (explaining that the second prong of the test supported asportation because the crimes occurred before and after the movement of the victim, but not during her movement); *Williams v. State*, 291 Ga. 501, 503-504 (1) (b) (732 SE2d 47) (2012) ("The evidence, however, shows a *demarcation* between the aggravated battery offense . . . and the movement of the victim. The victim was beaten before and after he was moved by his attackers, first inside his trailer and later at the brick wall behind the doctor's office, but there is no indication of an aggravated battery occurring while he was being moved between the two locations."

7

(emphasis supplied)). On the other hand, when the movement occurs during the commission of another crime, we have concluded that this asportation factor is not satisfied. See *Gonzalez*, 297 Ga. at 674 (holding that the second factor did not support a finding of asportation because the movement of the victim by grabbing her hair and throwing her against a wall or door as she tried to leave her apartment was part of "one violent event" and occurred during the commission of an aggravated assault and family violence battery); *Sellars v. Evans*, 293 Ga. 346, 347-348 (745 SE2d 643) (2013) (holding that, because the victim was being beaten during her movement from the inside to the outside of a house, the movement occurred during the commission of the aggravated assault and did not support a finding of asportation); *Brown v. State*, 288 Ga. 902, 905 (3) (708 SE2d 294) (2011) (holding that the movement of the victim by car and on foot to a place where he was robbed and shot occurred during the course of those crimes and did not support asportation).

Here, there is no evidence that the armed robbery was completed before Mrs. Love was moved to the safe and back to the bedroom. In fact, nothing of value was in the safe, and Mr. Love testified that the intruders did not leave until some point after Mrs. Love was back in the bedroom, making it likely that the

8

intruders took the $5,000 after moving Mrs. Love. Moreover, the record does not show whether, on the one hand, there was a demarcation between that movement and a subsequent taking of the money or whether, on the other hand, the taking of the money occurred immediately after the movement, such that the intruders' threats to kill the Loves, their demands for money, and their movement of Mrs. Love in an attempt to discover money were all part of one violent event that led to the taking of the money. In any event, because the record does not show that the movement occurred before or after the robbery, we cannot weigh this factor in favor of asportation.

Finally, although the movement may not have been an inherent part of either the aggravated assaults or armed robbery, the fourth *Garza* factor does not support asportation. In this regard, when appellant dragged Mrs. Love from the bedroom to the safe and then back to the bedroom, it cannot reasonably be said that the movement placed her in more danger than if she had stayed in the bedroom. There, she faced three armed intruders who were demanding money and saying things like, if "you don't tell me where the motherf---ing safe at, I'm gonna blow her brains out; you better tell me where the motherf---ing safe is; I'm gonna kill this b----; I'm gonna kill this b----." See *Levin*, 295 Ga. at 783

9

(holding that "[a]ppellant encountered the victim in her bedroom, and moving her back and forth to that room would not have put her in any more danger than she had been from the very beginning of the incident"). Similarly, the movement to the safe and back was not in the nature of the evil the kidnapping statute was designed to defend against, as it did not "serve[ ] to substantially isolate the victim from protection or rescue." See id.

For the foregoing reasons, there was insufficient evidence of asportation to support appellant's convictions for kidnapping Mr. and Mrs. Love.

Judgment reversed. Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, and Peterson, JJ., concur.

Decided August 14, 2018.

Habeas corpus. Hancock Superior Court. Before Judge Wingfield, Senior Judge.

Sarah L. Gerwig-Moore; Peters, Rubin & Sheffield, Foss G. Hodges; Miller & Key, J. Scott Key, for appellant.

Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.