**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 28, 2019**

# In the Court of Appeals of Georgia

A18A1686. ALEXANDER v. THE STATE.

MARKLE, Judge.

Yvonne Alexander was convicted by a jury of kidnapping with bodily injury (OCGA § 16-5-40 (d) (4)), kidnapping (OCGA § 16-5-40), cruelty to children (OCGA § 16-5-70), robbery (OCGA § 16-8-40), aggravated assault (OCGA § 16-5-21), burglary (OCGA § 16-7-1 (b)), and battery (OCGA § 16-5-23.1). She now appeals from the denial of her motion for new trial, as amended. For the reasons that follow, we affirm.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that in July of 2013, then 12-year-old C. S. was living with his father. One evening, he was home alone when he heard a noise he thought was a stray cat at the door. Suddenly,

a man and woman he did not recognize entered the house and seized C. S., one of them covering C. S.'s face. C. S. was unable to breath or see and, when he tried to remove the person's hands from his face, the other intruder tried to punch C. S. in the head. C. S. struggled to free himself and run, but the intruders taped his eyes and mouth closed. Although C. S. was able to breathe with the tape on his mouth, he still could not see anything except downward. He observed two black Converse sneakers with white trim and laces that one of the intruders was wearing and jeans. After C. S. was moved from a chair to the floor, the female instructed him to lift his legs, and his hands and feet were taped. C. S. began to cry, but the intruders warned him to be quiet. C. S. was struck twice about the head, leaving a scratch on his nose and a black eye. Although he could not see what was happening, he could hear what was going on as the pair unplugged appliances and removed the computer, monitor, television, and a camera. He also heard the male intruder refer to someone on the phone named "Vernon." C. S. recognized the name as a friend of his father.

At some point, one of the intruders instructed C. S. to stand up, and they moved him into the adjacent bathroom 10 to 12 feet away and locked the door. The woman asked whether he needed any medication, and then warned him to be quiet. C. S. could hear the pair move upstairs and search the rooms. Shortly thereafter, C. S. heard

2

them leave. About 15 minutes later, C. S. heard his father enter the home. C. S. began kicking the bathroom door, and his father found him.

One of the officers who responded to the crime scene spoke with C. S., who was upset and nervous. C. S. was able to tell the officer what happened when the intruders entered. C. S. also described what the male intruder was wearing, and confirmed that he heard both a male and female voice. A second officer who responded to the robbery testified that C. S. was shaken up by the incident. The officers found duct-tape in the bathroom, and one of the stolen items was located behind the apartment building.

The first officer then spoke with Vernon Nisbett and, based on this interview, the officer located several other suspects, including Alexander, Austin Hernandez, and Glenn Payton. Hernandez was later arrested and, when he was brought into the police station, he was wearing black Converse sneakers with white trim. Hernandez eventually admitted that they set up a robbery in which Vernon would distract C. S.'s father. Hernandez then implicated Alexander. Police later found some of the stolen items, which Payton had pawned. They also obtained phone records showing calls between Alexander, Nisbett, and Payton around the time of the robbery.

Hernandez and Alexander were tried together. At the trial, Payton testified that Alexander and Nisbett planned the robbery.[1] Nisbett would distract the father, Alexander and Hernandez would enter the house, and Payton would act as the driver and look-out. Payton further admitted that he grabbed the computer monitor and hid it in the bushes outside the apartment. The group planned that Alexander would communicate with Nisbett by phone during the robbery. They did not expect C. S. to be there.

Payton testified that he observed Alexander and Hernandez enter the house, and he watched from the door as Alexander grabbed C. S., struck him, and dragged him to the floor. He also saw that C. S. had duct-tape around his eyes and mouth. During the robbery, Nisbett phoned Alexander to let her know that C. S.'s father was headed back to the apartment. After they left, Alexander stated that she felt badly about hitting C. S. Payton and Hernandez later pawned some of the items taken in the robbery.

Nisbett also testified at trial, admitting that he helped Alexander set up the robbery. According to Nisbett, Alexander "was the brains behind the operation."

---

[1] Payton and Nisbett both pled guilty in connection with their roles in the robbery.

Alexander suggested the target of the robbery, and they agreed that she and Hernandez would enter the house. Originally, the plan was to tie up C. S.'s father using duct-tape, but they decided to distract him instead. They agreed they would communicate by phone during the robbery so that Alexander and Hernandez would have enough time to take things from the house, and Alexander said that they would share equally in the proceeds from the robbery. Nisbett confirmed that they did not know C. S. would be at the house, and that, after the robbery, Alexander admitted that she struck C. S. and duct-taped him during the robbery.

At the close of the State's case-in-chief, Alexander moved for a directed verdict. The trial court denied the motion. Hernandez then testified in his own defense, denying any involvement in the robbery. He stated that he told the others to leave him out of it when they decided to commit the robbery. He explained that, when he saw Alexander and Payton again shortly after the robbery, they were "freaking out" and "acting crazy" because C. S. was not supposed to have been at the house.

The jury convicted Alexander on all counts. Thereafter, Alexander moved for a new trial, as amended, arguing that the trial court erred in its instructions on the kidnapping charges, the evidence was insufficient to sustain her convictions, the

evidence was sufficiently close as to warrant the trial judge's exercise of discretion as the thirteenth juror, and that trial counsel rendered ineffective assistance.

At the hearing on the motion for new trial, trial counsel testified that her strategy was to "lay low" and not call any attention to her client. She noted that the evidence presented by the co-defendants was strong, and she did not have a defense except to argue that Alexander was not involved. She wanted the jury to focus on Hernandez. She did not object when the prosecutor asked C. S. the initial question regarding being duct-taped because there was no dispute that the child had been duct-taped and, thus, any error in the failure to object was harmless; she further expected the judge to overrule the objection, and she would have the opportunity to cross-examine the victim. As to the testimony from the two officers, counsel testified that she did not recall receiving any notice from the State about hearsay testimony in the form of C. S.'s statements to police. After noting that closing argument had not been transcribed, counsel stated that she likely focused on the State's failure to make out its case, the possible misidentification of her client, and inconsistencies in the victim's testimony.

At the close of evidence, the trial court issued its oral decision denying the motion for new trial. The trial court found that this was a kidnapping case; there was

evidence of slight movement; and the jury had the option of finding false imprisonment as a lesser included offense, but it did not do so. The trial court further found that counsel's performance was not deficient in failing to object to the State's reference to duct tape so as to not draw any further attention to it, and in any event, there was no prejudice because there was no dispute that the victim was duct-taped. As to the sufficiency of the evidence, the trial court stated the weight of the evidence was "very substantial," and the verdict was "not against the weight of the evidence." Thus, the trial court denied the motion. This appeal followed.

1. Alexander first argues that the trial court erred by instructing the jury with regard to the asportation element of the kidnapping charges because the slight movement of C. S. into the bathroom would not be sufficient to satisfy that element of the offense. On this same basis, she further contends that the evidence was insufficient to sustain the kidnapping convictions and that the trial court erred in denying her motion for directed verdict. We disagree.

OCGA § 16-5-40 (a) provides that "[a] person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." Further, OCGA § 16-5-40 (b) provides:

7

[S]light movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense . . . Movement shall not be considered merely incidental to another offense if it . . . [c]onceals or isolates the victim; . . . [m]akes the commission of the other offense substantially easier; . . . [l]essens the risk of detection; or [i]s for the purpose of avoiding apprehension.

With this standard in mind, we turn to Alexander's claims of error.

a. Jury instruction

The trial court instructed the jury that the charge of kidnapping required the State to prove the element of asportation, and that even slight movement could be sufficient as long as it was not merely incidental to another offense. The trial court further explained that movement to conceal or to isolate the victim or lessen the risk of apprehension was not merely incidental.

Alexander did not object to the jury instructions with regard to the asportation elements of the kidnapping charges. We thus review this claim for plain error. See *Lake v. State*, 293 Ga. 56, 58-59 (5) (743 SE2d 414) (2013). See also OCGA § 17-8-58 (b).

8

The "plain error" test . . . authorizes reversal of a conviction if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) *Lake*, 293 Ga. at 59 (5).

Alexander's claim of error fails on the first prong of the plain error analysis because the instruction given was not erroneous. The trial court's instruction tracked the statutory language and properly advised the jury of the asportation requirement. Thus, there was no plain error in the instruction given. See *Daniels v. State*, 264 Ga. 259, 260 (2), n. 4 (443 SE2d 622) (1994) ("the better practice is for the court to follow the specific language of the statute at issue or the suggested pattern jury instructions . . . .").

Alexander's entire argument focuses on the trial court's failure to instruct the jury based on the four-prong test set out in *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008). But her reliance on that case is misplaced, as *Garza* addressed the prior kidnapping statute and has been superseded by the statute for kidnapping offenses, such as Alexander's, committed on or after July 1, 2009. See OCGA § 16-5-40; *Mercer v. Johnson*, 304 Ga. 219, n. 1 (818 SE2d 246) (2018). Moreover, the pattern

jury instructions advises, "[f]or cases arising on or after July 1, 2009, judges should review the current version of OCGA § 16-5-40." (Emphasis omitted.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2010), § 2.26.30. Accordingly, we find no error in the trial court's jury instruction on these offenses.

b. Sufficiency of evidence of kidnapping

Alexander challenges the sufficiency of the evidence with regard to the element of asportation. We conclude that the evidence was sufficient to support the kidnapping convictions.

"When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation, punctuation, and emphasis omitted.) *Patterson v. State*, 272 Ga. App. 675, 676 (1) (613 SE2d 200) (2005). The defendant is no longer presumed innocent, and we view all of the evidence in the light most favorable to the jury verdict. *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014). Additionally, "the testimony of a single witness is generally sufficient to establish a fact." (Citation omitted.) *Huff v. State*, 300 Ga. 807, 810 (2) (796 SE2d 688) (2017). "The standard of review for the denial

10

of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." (Citation omitted.) *Sledge v. State*, 312 Ga. App. 97, 98 (1) (717 SE2d 682) (2011).

To establish the offense of kidnapping, the State was required to prove that the victim was moved.[2] OCGA § 16-5-40 (a). As OCGA § 16-5-40 (b) explains, even slight movement of the victim is sufficient as long as the movement is not merely incidental to the commission of some other offense. OCGA § 16-5-40 (b). Movement is not considered merely incidental to another offense if it:

> (A) [c]onceals or isolates the victim; (B) [m]akes the commission of the other offense substantially easier; (C) [l]essens the risk of detection; or (D) [i]s for the purpose of avoiding apprehension.

OCGA § 16-5-40 (b) (2) (A)-(D).

Here, the evidence was sufficient for a reasonable juror to conclude that the victim was moved for purposes of the statutory requirement. The victim testified that two people – a male and female – entered the apartment, duct-taped his hands and face, and moved him into the bathroom where he had to kick the door to be located

---

[2] This Court has explained that "the only difference between the crime of kidnapping and the crime of false imprisonment is the element of asportation." *Curtis v. State*, 310 Ga. App. 782, 787 (2) (714 SE2d 666) (2011).

11

and rescued. Nisbett and Payton testified that Alexander was the mastermind of the robbery. And there was corroborating evidence in the form of phone calls and texts between Alexander and Vernon during the commission of the robbery. Thus, there was evidence from which the jury could conclude that Alexander moved C. S. into the bathroom during the robbery to isolate or conceal him and to make it easier to commit the robbery. Accordingly, the evidence was sufficient to support the kidnapping convictions. See *Dupree v. State*, 303 Ga. 885, 887 (1) (815 SE2d 899) (2018) (victim was moved from the living room to her bedroom during the burglary and she was covered with a comforter to conceal her presence). See also *Taylor v. State*, 344 Ga. App. 122, 131-132 (1) (g) (809 SE2d 76) (2017) (moving the victim away from the doorway into interior room of apartment was sufficient asportation; it concealed and isolated the victim, reduced the likelihood of detection during the robbery, and enabled defendants to complete robbery); *Floyd v. State*, 342 Ga. App. 438, 441 (1) (a) (803 SE2d 597) (2017) (evidence sufficient to show asportation where defendant forced victim to walk upstairs and into various rooms during robbery because doing so made it substantially easier for the defendants to commit the robbery); *White v. State*, 332 Ga. App. 495, 498-499 (2) (c) (773 SE2d 448) (2015) (sufficient evidence of asportation under *Garza* where jury could infer that movement

12

of victim to a different room in the house was for purpose of isolating victim and to make it easier to commit a separate offense).

2. Alexander next argues that the trial court erred in failing to exercise its discretion to sit as the thirteenth juror with respect to the kidnapping counts.[3]

Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. These "general grounds" require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." *Butts v. State*, 297 Ga. 766, 771-772 (3) (778 SE2d 205) (2015).

"A trial court reviewing a motion for new trial based on these grounds has a duty to exercise its discretion and weigh the evidence and consider the credibility of the witnesses." *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013). If the trial court performs this duty, then we have no basis for reviewing the court's decision, as "such a decision is one that is solely within the discretion of the trial court." (Citation

---

[3] Although Alexander challenges the "verdicts in general," in her enumeration of error, she offers argument only with respect to the kidnapping charges. Therefore, she has abandoned any challenge to the remaining charges. See Court of Appeals Rule 25 (c) (2).

13

and punctuation omitted.) *Dixon v. State*, 341 Ga. App. 255, 264 (2) (b) (800 SE2d 11) (2017). A trial court's order that simply cites to the sufficiency of the evidence standard in *Jackson v. Virginia* does not show that the trial court fulfilled its duty to exercise its discretion. *Choisnet*, 292 Ga. at 861. See also *State v. Wilkerson*, __ Ga. App. __ (820 SE2d 60, 66-67 (2)) (2018); *Rutland v. State*, 296 Ga. App. 471, 475-476 (3) (675 SE2d 506) (2009). However, "the trial court need not explicitly speak of its discretion with respect to the general grounds, and unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it." *Murdock v. State*, 299 Ga. 177, 178 (2) (787 SE2d 184) (2016). See also *Butts*, 297 Ga. at 772 (3) (in the absence of any positive evidence showing that the trial court did not understand its discretion, appellate court would presume trial court declined to exercise it).

Here, the trial court's order denied the motion for new trial on all grounds and incorporated its oral findings from the hearing. In its oral ruling, the trial court stated, "[t]he evidence against [Alexander] is very substantial . . . . So as a matter of legalese the verdict is not against the weight of the evidence. The evidence supports the verdict, and the verdict is not contrary to the evidence." This statement demonstrates that the trial court understood its discretion under OCGA §§ 5-5-20 and 5-5-21 and

14

declined to exercise it. *Murdock*, 299 Ga. at 178 (2). Accordingly, there is no merit to Alexander's claim that she was entitled to a new trial on general grounds.

3. In a series of interrelated arguments, Alexander contends that she received ineffective assistance of trial counsel due to counsel's failure to (a) argue that the State had not met the element of asportation; (b) object to the police officer's hearsay testimony regarding C. S.'s statements; (c) object to the State's leading question to C. S. during direct examination; and (d) put forth any defense. We are not persuaded.

> To succeed on a claim that counsel was constitutionally ineffective, [Alexander] must show both that [her] attorney's performance was deficient, and that [s]he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed

15

questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018). With this standard in mind, we turn to Alexander's specific claims of error.

a. Alexander's claim with regard to trial counsel's failure to argue the asportation element fails because she cannot show prejudice. As discussed in Division 1, the evidence was sufficient to establish asportation.

Moreover, to the extent that Alexander argues that counsel's performance was deficient in failing to argue the asportation element in closing argument, we note that closing arguments were not transcribed. The absence of this evidence leaves us nothing to review. *Walker v. State*, 153 Ga. App. 831 (266 SE2d 580) (1980).

b. As to her claim that counsel's performance was deficient in failing to object to the officers' hearsay testimony regarding what the victim told them, we again find no prejudice.

One of the officers who responded to the crime scene spoke with C. S., who was upset and nervous. C. S. was able to tell the officer what happened when the

16

intruders entered. C. S. also described what the male intruder was wearing, and confirmed that he heard both a male and female voice. A second officer testified that C. S. was shaken up by the incident, and that officers found duct-tape in the bathroom. Notably, this testimony was cumulative of C. S.'s own testimony, as well as that of his father.

Moreover, to the extent that Alexander argues that the State failed to give notice of the hearsay testimony under OCGA § 24-8-820, even assuming the statute applies, we again find no prejudice. As discussed above, the testimony was cumulative of other admissible testimony.

In light of the overwhelming evidence against Alexander, and the cumulative nature of the officers' testimony, Alexander cannot show a reasonable probability that the outcome of her trial would have been different. *McAllister v. State*, 343 Ga. App. 213, 218 (3) (a) (807 SE2d 14) (2017) (defendant failed to show prejudice based on counsel's failure to object to cumulative, hearsay testimony of police officer regarding what victim said at the scene).

Alexander also contends that the officers' testimony bolstered the victim's recounting of the event. "It is erroneous for a witness, even an expert, to bolster the credibility of another witness by expressing an opinion that the witness is telling the

17

truth." (Citation and punctuation omitted.) *Wright v. State*, 327 Ga. App. 658, 661 (2) (a) (760 SE2d 661) (2014) "What is forbidden is opinion testimony that directly addresses the credibility of the victim, i.e., 'I believe the victim; I think the victim is telling the truth.'" (Citation and punctuation omitted.) Id.

But this is not what the officers testified here. Rather, the officers testified to their own observations of the victim at the scene of the robbery and did not comment on the victim's credibility. Thus, we find no merit to Alexander's claim that the officers improperly bolstered the victim's testimony.

c. Turning to trial counsel's failure to object to the State's leading question at the beginning of the victim's testimony, Alexander again cannot show prejudice.

At the beginning of C. S.'s testimony, the prosecutor asked C. S. if he knew the difference between telling the truth and lying. C. S. stated that he did. The prosecutor then said, "I need you to promise to tell the ladies and gentlemen the truth about what happened the night that you were duct-taped." Alexander contends that the reference to duct-tape was prejudicial and that counsel was ineffective in failing to object to it.

There was no dispute that the victim was duct-taped. The victim and the victim's father both testified that the child was duct-taped, an officer testified that he found duct-tape in the bathroom, and the jury saw the duct-tape. Any possible error

18

arising from the State's use of this leading question could not have affected the verdict. Therefore, Alexander's ineffective assistance claim on this ground fails.

d. Finally, Alexander challenges trial counsel's strategy to "lay low." We are not persuaded.

There is a "strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citation and punctuation omitted.) *Green v. State*, 291 Ga. 579, 581 (2) (731 SE2d 359) (2012). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014).

Here, trial counsel testified that her strategy was to point out the inconsistencies in the victim's testimony because she did not have a defense except to argue that Alexander was not involved, and she wanted the jury to focus on Hernandez instead of Alexander. To that end, trial counsel attempted in cross-examination to bring out inconsistencies in the victim's account of the events, the fact that he wore glasses, and that he could not identify Alexander as one of the intruders.

Alexander has not met her burden to show that counsel's performance in this regard was unreasonable. See *Collier v. State*, 303 Ga. App. 31, 34-35 (3) (692 SE2d 697) (2010) ("[T]he decision of whether to interpose certain objections is a matter of trial strategy and tactics. Errors in judgment and tactical errors do not constitute denial of effective assistance of counsel. Here . . . trial counsel made strategic decisions regarding whether to make objections, . . . and instead, they addressed the testimony during cross-examination. Such trial tactics and strategy do not amount to ineffective assistance of counsel.") (punctuation and footnotes omitted).

Even if this strategy was unreasonable, Alexander cannot show prejudice in light of the overwhelming evidence. The jury heard testimony from Nisbett and Payton, both of whom identified Alexander as the one who planned and carried out the robbery. In addition, the phone call and text logs established communications between Alexander, Nisbett, and Payton at the time of the robbery, all of which was consistent with the co-defendants' and the victim's testimony.

For the foregoing reasons, we affirm the trial court's denial of Alexander's motion for new trial.

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur*.